UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF | ) Case No. CV 11-09452-CJC (SH) |
| | ) |
| MARY LYNN CORTEL MADRONO, | )CERTIFICATION OF EXTRADITION )AND ORDER OF COMMITMENT |
| | ) |
| A Fugitive from the Government of the Republic of the Philippines. | ) ) |
| | ) |

I.  PROCEEDINGS

Complainant United States of America ("Government"), acting on behalf of the Government of the Republic of the Phillippines, filed a request to extradite Mary Lynn Cortel Madrono ("Madrono").[1]  The Government filed a memorandum in support of the request ("Memorandum"), Madrono filed an opposition to the request, the Government

_____

[1]      The Government has filed under seal the original and supplemental formal request for extradition, bound with ribbons and seals.  The Government has also filed redacted formal extradition papers as well as original supplements to formal extradition papers (under seal).

filed a reply to the opposition, the Government filed both a Lodging of a Supplemental Affidavit (two letters and a Supplemental Affidavit) and a Lodging of a Supplemental Letter, Madrono filed a supplemental opposition to the request, the Government filed a supplemental reply to the supplemental opposition, and Madrono filed a declaration in support of her opposition to the request.  An extradition hearing was held on June 15, 2012.  The Court's findings herein are based on its review of all of the evidence and arguments presented by the parties in their papers.[2]

The Philippines' charges upon which extradition is sought all revolve around Madrono's actions on May 24, 2005 as the Branch Head of the Visayas Avenue Branch of the United Coconut Planters Bank in Quezon City, the Phillippines.  Madrono has been charged in the Philippines with eleven charges -- five counts of Qualified Theft Through Falsification of Commercial Document (withdrawal slips); two counts of Qualified Theft (pre-terminated[3] Certificates of Time Deposit]); and four counts of Falsification of Commercial Document (deposit slips).  (See Memorandum, Exhibit A ["Exhibit A"] at 40, 44-47, 59-60, 63-84).[4]  Warrants for Madrono's arrest for Qualified

_____

[2]      The Court is authorized to conduct extradition proceedings, and the Court has subject matter jurisdiction over the case and personal jurisdiction over Madrono (who is within the Central District).  See 18 U.S.C. § 3184; Local Rule 72-1; General Order No. 05-07.

[3]      A pre-termination is "[t]he closing of an account prior to maturity."  See Memorandum, Exhibit B at 172.

[4]      Under Article 308 of the Revised Penal Code of the Philippines, "Theft is committed by any person who, with intent to gain but without violence against or intimidation of persons nor force upon things, shall take personal property of another without the latter's consent."  Under Article 310 of the Revised Penal Code of the Philippines, a theft is qualified "if it is committed with grave abuse of confidence." (See Exhibit A at 44, 151).
          The penalty for theft of things valued from 12,000 pesos to 22,000 pesos (a value less than the amount alleged to have been stolen in each charge) is a

1  Theft through Falsification of Commercial Document were issued in the Philippines on

2  January 17, 2006 (see id. at 85-89), and Madrono is the person being sought by the

3  Philippines.  The following summary places the charges in context.

4  ///

5  ///

6  ///

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  _____

16  minimum prison term of six years and one day.  The term increases as the amount of

17  the stolen item increases, with a maximum term of twenty years.  (See id. at 44-45,
151).  The penalty for qualified theft is a prison term ranging from twenty years and

18  one day to forty years.  (See id. at 44-45, 144, 151; Memorandum, Exhibit C).

19        Under Articles 171 and 172 of the Revised Penal Code of the Philippines,
a private individual falsifies a document if he or she commits inter alia the following

20  act(s):  "Causing it to appear that persons have participated in any act or proceeding

21  when they did not in fact so participate"; or "Attributing to persons who have
participated in an act or proceeding statements other than those in fact made by them."

22  (See id. at 45-47, 142-43).

23        The penalty for falsification of commercial document by a private individual
is a prison term ranging six months and one day to six years.  (See id. at 46-47, 144).

24        The penalty for qualified theft through falsification of commercial document

25  by a private individual is a prison term ranging from twenty years and one day to forty

26  years.  (See id. at 47, 145).

27

28                                                    3

## II.  SUMMARY OF ALLEGATIONS[5]

At the time of the events in question, Madrono was employed as the Branch Head of the Visayas Avenue Branch of United Coconut Planters Bank.  Madrono was the overall supervisor and was responsible for planning, organizing, directing, coordinating and controlling the activities of that branch.  Madrono also was responsible for developing and managing relationships with customers and promoting the bank's services, developing existing accounts, soliciting prospective depositors, and ensuring customer service.  Madrono was authorized to sign bank documents, and was responsible for verifying and approving the opening and renewal of accounts as well as the withdrawals, terminations, and pre-termination of accounts.  (See Exhibit A at 90, 120, 150).

On May 24, 2005, Madrono gave Ana Sicat ("Sicat"), a bank teller at the Visayas Avenue Branch, five deposit slips -- already containing handwritten dates, account numbers, and amount in words and figures -- for processing.  Sicat asked about the actual cash deposits corresponding to the deposit transactions, and Madrono said that the deposits would be funded with withdrawals later during the day.  Therefore, Sicat

---

[5]     The summary is based on statements contained in the following documents: (1) Complaint-Affidavit of Gerardo T. Auson, Jr., dated June 10, 2005 (Exhibit A at 90-92); (2) Amended Complaint-Affidavit of Gerard T. Auson, Jr., dated September 8, 2005 (id. at 120-24); (3) Affidavit of Ana Teresa Sicat, dated June 10, 2005 (id. at 93-95); (4) Affidavit of Angelica R. Gatinga, dated June 10, 2005 (id. at 96-97); (5) Affidavit of Resty Laboc, dated June 10, 2005 (id. at 98-99); (6) Affidavit of Ariel Lopez, dated June 10, 2005 (id. at 100-01); and (7) Affidavit of Ma. Edene M. Recio, dated September 8, 2005 (id. at 125-26).  All these documents were certified by the "principal consular of the United States in the Philippines."  (Id. at 3, ¶ 6, 35).  The affidavit of Ms. Burgos, as well as the supplemental letter and attachments of Mr. Paras have been considered, but are not relied on in reaching the determination of extraditability.

posted the five deposits.  (See id. at 90-91, 93).[6]

That same day, Madrono instructed Angelica Gatinga ("Gatinga"), Marketing Associate of the Visayas Avenue Branch, to pre-terminate Certificates of Time Deposit ("CTD") for two different accounts.  Madrono handed Gatinga the original copy of the CTD for one account and a duplicate copy of the CTD for another account (Madrono claimed the client had the original, and that she would get it from the client later), and instructed Gatinga to deposit the proceeds into the savings account of Avelina Navarez (one of the accounts for which Madrono had earlier given Sicat a deposit slip for processing).  Gatinga pre-terminated the two CTDs, without the authorization or consent of the clients.  Gatinga gave Sicat a deposit slip for the account of Avelina Navarez[7] -- the proceeds of the pre-terminated CTDs --  for processing.  Sicat posted the deposit.  Madrono then obtained from Gatinga original and duplicate copies of the transaction ticket pertaining to one CTD (Madrono said she would get the signature of the client), and the duplicate copy and corresponding transaction ticket for the other CTD.  (See id. at 91, 93-94, 96, 121-22, 125).[8]

That afternoon, Madrono gave Sicat five withdrawal slips -- already containing handwritten dates, account numbers (two of which were the same accounts for which Madrono had earlier given Sicat deposit slips), and amount in words and figures  -- for processing.  The withdrawal slips had been approved and signed by Madrono, although

[6]     According to the Government, four of the deposit transactions correspond to the four Falsification of Commercial Document charges.

[7]     According to a document prepared by the bank's law firm in response to the request of the United States Attorney, "Avelina Navarez is a valued client of Mary Lynn Madrono who transacted with her personally."  (Memorandum, Exhibit B at 172).

[8]     According to the Government, the transactions related to the two pre-terminated CTDs correspond to the two Qualified Theft charges.

though they did not contain the signatures of the depositors.   Sicat processed the withdrawals.  The original copies were given to Madrono to obtain the signatures of the clients.   Based on Madrono's confirmation of the withdrawal slip transactions and on Madrono's statement that she would have the clients sign the withdrawal slips, Ariel Lopez ("Lopez"), the Service Control Officer at the Visayas Avenue Branch, overrode the five withdrawal slip transactions.   (See id. at 94, 98, 100, 121-22, 125, 127-31).[9] [10]

From May 25, 2005 to June 5, 2005, Madrono went on mandatory leave.  On June 1, 2005, Madrono and two sons flew to the United States.  Madrono's husband and another son flew to the United States three days later.  Madrono left the Philippines without applying for a leave of absence and without turning over her responsibilities to the appropriate bank officer.  Madrono was supposed to return to work on June 6, 2005, but did not do so.  (See id. at 91, 122-23, 136-40[11]).

### III.  DISCUSSION

A.   The Government Has Met the Requirements for a Certificate of Extradition.

In order to secure the Certificate of Extradition, the Government must satisfy the following requirements of 18 U.S.C. § 3184: (1) An extradition Treaty is in force between the Philippines and the United States; (2) The Treaty allows for extradition on

---

[9]     According to the Government, the five withdrawal slip transactions correspond to the five Qualified Theft Through Falsification of Commercial Document charges.

[10]     The Court has not included in its summary acts allegedly committed by Madrono for which she was not charged.

[11]     The Court notes that the Certifications provided by the Republic of the Philippines, Department of Justice, Bureau of Immigration state that the destinations of the flights taken by Madrono and her family members on June 1 and June 4, 2005 are "not available."

the crimes charged against Madrono; and (3) There is probable cause that Madrono committed each of the charges for which extradition is sought.  See also Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); Prasoprat v. Benov, 421 F.3d 1009, 1013 (9th Cir. 2005), cert. denied, 546 U.S. 1171 (2006); Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1009-10 (9th Cir. 2000).[12]

 

1.   There is probable cause that Madrono committed each of the charges for which extradition is sought.[13]

    a.   Legal authority

The standard of probable cause is whether there is any evidence warranting the finding that there is reasonable ground to believe the accused is guilty.  Fernandez v. Phillips, supra; Mirchandani v. United States, 836 F.2d 1223, 1226 (9th Cir. 1988). Probable cause exists if there is "competent evidence to support the belief that the accused has committed the charged offense."  Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986), cert. denied, 479 U.S. 882 (1986); see also Collins v. Loisel, 259 U.S. 309, 317, 42 S.Ct. 469, 66 L.Ed. 956 (1922); Zanazian v. United States, 729 F.2d 624, 626 (9th Cir. 1884).  "Evidence of flight that is suggestive of consciousness of guilt is admissible to establish probable cause in an extradition proceeding."  In re Extradition

---

[12]   Madrono does not challenge the first element above.  An extradition Treaty between the Philippines and the United States is currently in force and was in force at all times relevant to this matter.  (See Exhibit A at 1, ¶ 3, 15-34). Madrono does challenge the second element (with respect to the theft charges only) and the third element above.  Since Madrono's primary contention concerns the absence of probable cause that she committed the charged offenses (the third element), the Court will address that issue first.

[13]   Contrary to the Government's suggestion, the Court cannot alternatively make a probable cause determination as to Madrono's entire course of conduct.  Each of the eleven Informations issued in the Philippines alleges a specific act of misconduct by Madrono.  (See Exhibit A at 63-84).

of Santos, 795 F.Supp.2d 966, 983 (C.D. Cal. 2011).

Probable cause may be established by sworn statements, or unsworn statements, of absent witnesses. See Collins v. Loisel, supra; Zanazanian v. United States, supra, 729 F.2d at 626-27 (noting that "[n]either the applicable treaty nor United States law requires that evidence offered for extradition purposes be made under oath"); Maneiro v. Gregg, 164 F.3d 1199, 1206 (9th Cir. 1999)("The Federal Rules of Evidence do not apply in an extradition hearing."); see also Exhibit A at 23 (Under the extradition treaty between the Philippines and the United States, "a request for extradition of a person who is sought for prosecution must be accompanied by such evidence as, according to the law of the Requested State, would provide probable cause for his arrest and committal for trial if the offense had been committed there[.]").

"Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition herein, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." Maneiro v. Greg, supra, 164 F.3d at 1207 n.7; see also Republic of France v. Moghadam, 617 F.Supp. 777, 781 (N.D. Cal. 1985)("While the accused may produce evidence to explain matters, the court may exclude evidence which merely contradicts government testimony, poses conflicts of credibility or establishes a defense.").

b.    Falsification of Commercial Document charges (deposit slip transactions)

There is probable cause to support the conclusion that Madrono committed the charges of Falsification of Commercial Document (deposit slips) with respect to: (1) the savings account of Avelina Navarez, in the amount of 3,500,000 pesos (the equivalent

of $63,000)[14] (see Exhibit A at 63-64), (2) the savings account of Digital Data Corporation, in the amount of 900,000 pesos (the equivalent of $16,200) (see id. at 65-66), (3) the savings account of Avelina Navarez, in the amount of 3,000,000 pesos (the equivalent of $54,000) (see id. at 67-68), and (4) the savings account of Julita Vinluan, in the amount of 50,000 pesos (the equivalent of $90,000), based on the evidence of Madrono's responsibilities and duties (see id. at 90, 120, 150), Madrono's unauthorized actions as to the deposit slip transactions involving Sicat (see id. at 90-91, 93, 125), and Madrono's flight from the Philippines (see id. at 91, 122-23, 136-40).

> c.    Qualified Theft charges (CTD pre-terminations)

There is probable cause to support the belief that Madrono committed the charges of Qualified Theft with respect to (1) the CTD of Cesar C. Quesada, in the amount of 2,470,762.95 pesos[15] (the equivalent of $44,473.73) (see Exhibit A at 81-82), and (2) the CTD of Paul T. Quesada, in the amount of 749,993.60 pesos (the equivalent of $13,449.88) (see id. at 83-84), based on the evidence of Madrono's responsibilities and duties (see id. at 90, 120, 150), Madrono's unauthorized actions as to the CTDs involving Gatinga and Sicat (see id. at 91, 93-94, 96, 121-22, 125), and Madrono's flight from the Philippines (see id. at 91, 122-23, 136-40).

> d.    Qualified Theft through Falsification of Commercial Document charges (withdrawal slip transactions)

---

[14]    On May 24, 2005 (the date of the transactions at issue), the currency exchange rate for a Philippine peso was .018 United States dollars. See www.xe.com.

[15]    The Court notes that Gatinga stated that the amount in the CTD of Cesar C. Quesada was 2,471,713.63 pesos. (See Exhibit A at 96). According to the Government, her statement appears to be a clerical error.

There is probable cause to support the belief that Madrono committed the charges of Qualified Theft through Falsification of Commercial Document (withdrawal slips) with respect to:  (1) the savings account of Digital Data Corporation, in the amount of 800,000 pesos (the equivalent of $14,400) (see Exhibit A at 79-80), (2) the savings account of TNS Trends Incorporated, in the amount of 1,600,000 pesos (the equivalent of ($28,800) (see id. at 71-72)[16], (3) the savings account of Avelina Navarez, in the amount of 400,000 pesos (the equivalent of $7,200) (see id. at 77-78), (4) the savings account of Christi Corpus, in the amount of 400,000 pesos (see id. at 75-76), and (5) the savings account of Christi Corpus, in the amount of 202,270 pesos (the equivalent of $3,640.86 (see id. at 73-74), based on the evidence of Madrono's responsibilities and duties  (see id. at 90, 120, 150), Madrono's unauthorized actions as to the withdrawal slip transactions involving Sicat and Lopez (see id. at 94, 98, 100, 121-22, 125, 127-31), and Madrono's flight from the Philippines (see id. at 91, 122-23, 136-40).

## 2.  The charges are extraditable offenses under the Treaty.

Article I of the Extradition Treaty provides that the Philippines and the United States "agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offense."  (Exhibit A at 18).  Article II of the Treaty defines "extraditable offense", in pertinent part, as an offense "punishable under the laws in both Contracting Parties by deprivation of liberty for a period of more than one year, or by a more severe penalty."  (Id.).

---

[16]     The Court notes that, although the Information indicates the savings account belonged to PNS Trends Incorporated, Gerardo Auson, Jr., Sicat, Resty Laboc, Lopez, and Ma Edene Recio state that the savings account belonged to TNS Trends, Inc.  (See Exhibit A at 90, 94, 98, 100, 122, 125).  According to the Government, that statement in the Information appears to be a clerical error.

Under the doctrine of dual criminality, the charges against Madrono must be sufficiently analogous to state or federal crimes in the United States.  See Collins v. Loisel, supra (dual criminality satisfied because Indian offense of 'cheating' was analogous to Louisiana offense of 'false pretenses'); United States v. Cauwenberghe, 827 F.2d 424, 428 (9th Cir. 1987)("[U]nder the doctrine of 'dual criminality,' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting nations."), cert. denied, 484 U.S. 1042 (1988); Matter of Extradition of Russell, 789 F.2d 801, 803 (9th Cir. 1986)("[E]ach element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States.  It is enough that the conduct involved is criminal in both countries.").

Here, the doctrine of dual criminality has been satisfied on each of the charges alleged against Madrono.  The charges of Falsification of Commercial Document (deposit slip transactions), carrying a maximum prison term of six years (see footnote 4 above), are analogous to the United States federal crime of False Statement to a Bank (18 U.S.C. § 1014), carrying a maximum prison term of 30 years.[17]  In addition, the charges of Qualified Theft (pre-terminated CTDs) and Qualified Theft through Falsification of Commercial Document (withdrawal slip transactions), both carrying maximum prison terms of forty years (see footnote 4 above), are analogous to the United States federal crime of Theft by Bank Employee (18 U.S.C. § 656), carrying a maximum prison term of 30 years for amounts greater than one thousand dollars.  Contrary to Madrono's contention, each of the charges of Qualified Theft and Qualified Theft through Falsification of Commercial Document alleges an amount greater than

[17]    The Court notes that Madrono does not challenge the dual criminality for the charges of Falsification of Commercial Documents.  The Court's citation to a particular United States Statute does not imply that dual criminality can be only established through that statute.

11

one thousand dollars, as discussed above.

IV.    <u>CONCLUSION</u>

Based on the foregoing, the Court finds that Madrono is extraditable for the offenses for which extradition has been requested, and hereby certifies this finding to the United States Secretary of State as required under 18 U.S.C. § 3184.

IT IS ORDERED that a certified copy of this Certification of Extradition and Order of Commitment and a certified copy of the other records and transcript of these proceedings be forwarded by the Clerk of the Court to the Secretary of the State, Department of State, to the attention of the Office of the Legal Adviser.

IT IS FURTHER ORDERED that Madrono is committed pursuant to 18 U.S.C. § 3184 to the custody of the United States Marshal for the Central District of California, or his authorized representative, there to remain pending final disposition of this matter by the Secretary of State and surrender to designated agents of the Government of the Republic of the Philippines.

DATED: <u>June 20, 2012</u>


_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE